## CAMP vs. ELSTON.

[BILL QUIA TIMET, &C.]

1. *Bill quia timet; when without equity.*—A bill *quia timet*, or for performance of a contract of sale of lands by an administrator with the will annexed under a power given by the will, should not be entertained when the allegations of the bill show that the title of the complainant is either good and sufficient at law or wholly void. In either aspect, there is a well known and adequate remedy at law.

2. *Same; cross-bill.*—A cross-bill filed in such a case should not be retained, after the dismissal of the original bill, merely as a means of enforcing the collection of rents, as there is also in such case an adequate remedy at law.—Rev Code, § 2607.

3. *Same; practice.*—In such case both bills should be dismissed without prejudice, and the costs divided.

APPEAL from Chancery Court of Talladega.
Heard before Hon. B. B. McCRAW.

The facts upon which the case turns are sufficiently stated in the opinion.

TAUL BRADFORD, for appellant.
LEWIS E. PARSONS, *contra.*

[No briefs came into Reporter's hands.]

PETERS, J.—The bill in this suit alleges, among other

things, that Oliver H. Elston departed this life in the county of Talladega in this State on November 8, 1857, after having made and published his will, which was admitted to probate and recorded in the probate court of said county of Talladega, in which the testator resided at his death. The persons appointed executors in said will accepted the trust, and undertook the administration of said testator's estate. But after having conducted said administration for some time, they resigned their office of executors as aforesaid, and made final settlement of their administration in said probate court as required by law, and Mary E. Elston, the widow of said testator, was duly appointed administratrix *de bonis non*, with the will annexed, of the estate of Oliver H. Elston, deceased, was duly qualified as such, and entered upon the discharge of her duties as such administratrix as aforesaid. In executing her duties as such administratrix, said Mary E. Elston sold a portion of the lands of her said testator to said Joseph Camp. The power in the said will, under authority of which said sale was made, is in these words: "I will to my beloved wife, Elizabeth E'ston, after my just and legal debts have been paid, my entire estate, consisting of lands, negroes, stock, &c., so long as she remains a widow, or should deem it necessary as my children become of age to give each a distributive share. Should she marry, I bequeath to her alone a child's part. It is my desire that my two young mules, my sorrel mare, and so much of my old tract of land and my bank stock, and a negro girl named Violet, should be sold, which is left discretionary with my executors and beloved wife, as will pay my debts." Mrs. Elston was appointed administratrix as aforesaid on the 6th day of May, 1859; and said sale of said lands to said Camp was made on the 26th day of November, 1861. The deed from Mrs. Elston to Camp seems to be perfectly regular and formal, and under it Camp paid the purchase-money and was put into possession of the lands therein conveyed. After this, on April 15th, in the year 1869, the probate of said will was set aside and declared null and void, and the letters

testamentary to Mrs. Elston were revoked by order of said probate court of said county of Talladega. And the bill alleges that a portion of the heirs of said deceased testator had threatened to disturb said Camp in his possession of said lands under said deed, and that he had fears that their threats would be carried into effect. The bill concludes with a prayer for a perpetual injunction against Mrs. Elston and her children who are heirs of said testator, to restrain them from recovering said lands by suit at law. There is a cross-bill by the widow and certain of her said children, in which they insist upon the total invalidity of said sale, and that said deed is wholly void, and ask that the said Camp account for rents and occupation of said land during his possession of the same under said sale. There is much other matter alleged in the said original bill and said cross-bill, which is omitted here, as it does not influence this opinion or the law of this case. On the hearing, the learned chancellor dismissed the original bill and retained the cross-bill.

From this decree the complainant, said Camp, who is appellant in this court, brings the case here by appeal, and assigns the action of the court below as error.

I purposely avoid any expression of opinion in this discussion on the validity or invalidity of the proceedings in said court of probate, as to the probate of said will or the setting the same aside as null and void, or as to the validity or invalidity of said sale of said lands to said Camp. These are questions not necessarily involved in the discussion of this case, as the same is presented in said original bill and said cross-bill.

Passing from this part of the discussion without further remark, it is obvious that the bill in this case can not be maintained, in whatever light it may be viewed. Mrs. Elston's sale of the lands mentioned in her deed to Camp was made without an order of court, but under the power given her by the will. If the sale made by Mrs. Elston was valid, as is insisted in the complainant's bill, then her deed was valid, and it passed a good title to Camp, and his remedy

at law is without embarrassment; because the deed vested in him a sufficient legal title, which is susceptible of affording him a full defense at law.—Rev. Code, § 2599. In such a case equity will not interfere.—Shep. Dig. p. 287, §§ 5, 6. If, on the other hand, the sale was wholly void, then the deed is void; and chancery can not give that validity which the law forbids and is wholly void. That which is void, is as though it did not exist. It is absolutely null, and can not be confirmed or made effectual. It necessarily follows, from this view of this case, that there is no equity in the original bill. It was, therefore, properly dismissed.

The original bill having been dismissed, the cross-bill became a mere attempt to collect the rents of the lands in controversy, for use and occupation, during the time the same had been in the possession of Camp under his deed. If the deed was valid, there was no rents due. If it was invalid, as the complainants in the cross-bill insist, then there was a sufficient and well ascertained remedy at law. Rev. Code, § 2607. For this reason, the cross-bill should also have been dismissed; but both without prejudice to an action at law, in favor of the parties to the original or the cross-bill.

The learned chancellor, then, erred in retaining the cross-bill. For this error, the judgment of the court below is reversed; and this court, proceeding to render the judgment that should have been rendered in the court below, doth order, adjudge and decree that the said original bill and said cross-bill be dismissed out of this court, but without prejudice to any action at law or in equity that the parties to this suit may hereafter choose to institute touching the matters in controversy in this suit. And the costs in this court and the court below will be divided between the parties.