(Superior Court of Cincinnati)
General Term.

W. F. ROBERTSON, v. THE CONSOLIDATED BOAT STORE COMPANY. A CORPORATION UNDER THE LAWS OF OHIO, et al.

1. When a referee is ordered to report his findings on or before a day certain fixed by the court, he has no authority after that time to hear witnesses, make findings, or pass on exceptions to his report or on motions for a new trial. His proceedings after that time are absolutely void, and form no basis for any judgment or order of the court.

2. The mere fact that after the day fixed and before the report was filed, an interested person appeared and participated in the proceedings, will not estop such person from afterwards objecting to the report on the ground that the referee had no power to make it.

---

HOLLISTER, J.

The plaintiff in error, W. F. Robertson, was a stockholder in The O'Neal & Price Company, a corporation under the laws of Ohio. The Consolidated Boat Store Company, defendant in error, was the plaintiff below in an action against The O'Neal & Price Company, and its stockholders, brought to assess the stockholders on their double liability under the constitution and statute, and to compel the payment by them of unpaid subscriptions to capital stock.

On July 10th, 1894, a referee, theretofore appointed was duly qualified, and proceeded to discharge the duties of his office which were, under the order of the court, to take testimony, enforce the attendance of witnesses and the production of books and papers, to find who the stockholders were, the amounts of stock held by each, their solvency or insolvency, to ascertain who the creditors were, and the amount of indebtedness of the corporation, to hear and determine all the issues of law and fact relative to the liability of stockholders, to report the testimony with his findings to the court, and in general, to do every act authorized to be done and performed by a referee under the code.

On December 12th, 1895, the referee filed his report, together with the wirtten testimony of witnesses, and many exhibits, and made findings which Robertson sought to reverse by filing a motion for a new trial before the referee, by exception to the report, by motion in the court below to set aside the report, by motion at the special term for a new trial, and finally, upon judgment in that court confirming the report, by filing a petition in error with a bill of exceptions in this court.

The record is voluminous and the assignments of error many, but as all of the alleged errors may be disposed of by the determination of one question presented by the record, we reach our conclusion upon a consideration of that question alone.

It appears that on August 3rd, 1895, the court ordered the referee to file his report in thirty days. Under this order, the report would have been due September 2nd, but on August 12th, that order was set aside, and "the time for making said report was extended until October 15th, 1895." On October 21st, it was ordered that the referee file his report "without fail, on or before November 10, 1895." On the 8th of November, an entry was made granting the referee eleven days farther time in which to file his report. Under these orders, the referee had authority to make his report on or before the 21st of November, 1895. The report was not filed until the 12th of December. Between the dates last mentioned, the referee took considerable testimony pertinent to the issues in the case; made his findings of law and fact, met with counsel for the purpose of disposing of exceptions to his report, and passed on motions to set aside the report and for a new trial.

The chronological entries on the appearance docket, as shown, demonstrate conclusively that the referee had received no authority whatever to act between November 21st, 1895, and the following December 12th.

It is claimed, however, that this defect, if defect it be, was cured by an entry made December 14th, 1896, something more than a year after the report was filed. The order reads:

"It appearing that an extension of time was granted by the court for the filing of the referee's report on or about the 15th day of October, 1895, for a period beyond the date of the filing of said report, to-wit: December 12, 1895, and no entry granting such extension of time was made.

"'It is ordered that this entry be now made and entered as of the 15th day of October, 1895, nunc pro tunc, for the purpose of recording the action of the court in granting such extension.

"To all of which the defendants, W. F. Robertson and Fred A. Geier, except.''

There can be no doubt but that the court could by a nunc pro tunc order, correct the record so that it would set forth a judicial act actually performed at a preceding term, but that was not at that time entered on the minutes, Cleveland Leader Printing Co. v. Green, 52 Ohio St., 487, and that under such order the referee would have had ample power to exercise judicial functions up to and including December 12th, 1895, the day he filed his report.

But that order was effective as of October 15th, and had the same force as if entered on that day, hence we must look to orders of subsequent date to ascertain just what the court did after the date of the unrecorded order. It has been shown that notwithstanding this order, the court, six days afterwards, ordered the referee to file his report without fail, on or before November 10th, and again granted eleven days after that date for that purpose. Those orders show beyond question, that while the court may have been willing on October 15th, to extend the time to the 12th of December, yet, that within a week after the order to that effect was made, it was annulled by the entry requiring the report to be filed without fail by November 10th.

While a referee performs judicial functions and a trial before him is conducted in the same manner as before a judge, as a case upon submission, secs. 5210-5218, 557-2, Rev. St., Lawson v. Bissell, 7 Ohio St., 129, 132, 133; Cincinnati v. Cameron, 33 Ohio St., 336, he derives his powers and authority, where they are not prescribed by law, from the court which appoints him. Whether the court has inherent power to appoint and regulate and control his proceedings or not, it does get authority from the statute to create the office, and as the law does not fix a time within which the referee's duties are to be performed, it must be presumed that that duty is left to the court. The referee then performs his duties, and has duties to perform, only within such time as the court, in its discretion, may grant to him.

His office is not of such a nature that he may de facto act as judge after the time has arrived to which his judicial functions were limited, and his proceedings are not of the character to which the law gives immunity from collateral attack; for he reports his proceedings to the court which appointed him, and the court, subject of course to review, is the only forum in which the proceedings can be attacked, and that, too, only in the case for the purposes of which the appointment was made.

"A referee is born of an order; without it, he is not" quotes Brewer, J., in Arn v. Coleman, 11 Kan., 460, 461, and though some search has failed to disclose the origin of the statement, yet it fits the case before us, and has the approval of eminent authority. And that distinguished judge uses language in DeLong v. Stahl, 13 Kan., 558, so apt that we quote it in full:

"The referee is an officer whose power and duties are created by the order of the court. If he go outside the limits of that order, his acts are void. When the time within which by the terms of the order he must act has expired, his office has ceased and his powers are ended. Neither party is obliged to take any further notice of the reference. Here he was ordered to make his report by a specified time. When that time had passed without the filing of a report, his powers as referee were at an end, and any further action was as though no order of reference had been made. Nor did the confirmation of the report make valid that which was before void. The report, when filed was no more than a volunteer report; and a court cannot by confirmation breathe life into such a document.''

To the same effect are Brower v. Kingsley, 1 Johnson's cases, 434; Knie v. Harrington, 1 Blacfk. 78; Hannen v. Coffin, 1 Oregon, 100; Ryan v. Dougherty, 30 Cal., 219; Francis v. Ames, 14 Ind., 251; Goodale v. Case, 71 Iowa, 434; White v. Puryear, 10 Yerger, 441; Douglass v. Smith, 19 N. Y. S., 630; Robinson v. O'Connor, 12 Neb., 405.

There are cases of which Dietrichs v. Railroad Co., 13 Neb., 3, and Kellar v. Sutrick, 22 Cal., 472, are examples, which hold that the mere filing of the report after the time limited will not invalidate it, and render all of the referee's acts under the order of reference nugatory. On this point we express no opinion, but we do hold that the acts of the referee in taking testimony, making finding, passing on motions and exceptions after November 21st, 1895, were without authority and absolutely void. Nor is the situation changed by the fact that counsel for Robertson appeared after that time and participated in the proceedings; Goodale v. Case, 71 Iowa, 434.

When, therefore, the order of confirmation was made, and judgment entered upon the report, the court had nothing before it upon

which to base its orders. The judgment was erroneous, and it must be reversed.

Jackson & Smith, JJ., concur.

Judge Hunt did not sit in this case.

Pogue & Pogue (Province M. Pogue of counsel), for Plaintiff in Error.

Healy & Brunner, and Otto Pfleger, for Defendants in Error.